UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA R. MCPHEE,

        Plaintiff,        CIVIL ACTION NO. 11-cv-13399

vs.

                           DISTRICT JUDGE ARTHUR J. TARNOW

COMMISSIONER OF        MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Lisa McPhee seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security for her physical and mental impairments under 42 U.S.C. § 405(g) and § 1383(c). (Docket no. 1.) Before the Court are Plaintiff's Motion for Remand Pursuant to Sentence Four (docket no. 18) and Defendant's Motion for Summary Judgment (docket no. 20).

The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.**    **RECOMMENDATION:**

This Court recommends that Plaintiff's Motion to Remand (docket no. 18) be GRANTED IN PART and DENIED IN PART. Because the Court recommends granting Plaintiff's Motion in part, Defendant's Motion for Summary Judgment (docket no. 20) should be DENIED.

## II.  PROCEDURAL HISTORY:

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of July 19, 2007, alleging that she had been disabled since July 2, 2007, due to the following conditions: Bell's Palsy; Internal Derangement of the Right Shoulder; Left Shoulder Tear; Heel Spurs; Migraine Headaches; Obesity; Adjustment Disorder with Depressed Mood; and Anxiety Disorder. (TR 1147.) The Social Security Administration denied benefits. (TR 1145.) Plaintiff requested a *de novo* hearing, which was held via video on February 22, 2010, before Administrative Law Judge (ALJ) Karen Sayon, who subsequently found that the claimant was not entitled to Disability Insurance Benefits because Plaintiff was capable of performing other work in the economy. (TR 1158.) The Appeals Council declined to review the ALJ's decision (TR 1132), and Plaintiff commenced the instant action for judicial review. Plaintiff filed her Motion for Remand, and Defendant filed its Motion for Summary Judgment; the issues for review are whether Defendant's denial of benefits was supported by substantial evidence on the record and whether the ALJ's determination of Plaintiff's residual function capacity (RFC) accurately portrayed Plaintiff's physcial and mental impairments.

## III.  PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.  Plaintiff's Testimony

Plaintiff was thirty-eight years old at the time of the administrative hearing and thirty-five years old at the time of alleged onset. (TR 2223.) Plaintiff has a one year of college education and past work experience as a nursing assistant, a gas-station attendant, a cashier, and a waitress. (TR 2224-26.) Plaintiff testified that she hasn't worked since July 2007 because of an injury to her right shoulder. (TR 2225, 2228.) She testified that in addition to her right-shoulder injury, her ability to

work is affected by Bell's Palsy (TR 2226), heel spurs (TR 2227), an injury to her left shoulder (TR 2228-29), depression (TR 2230), anxiety (TR 2231), vision problems, and migraine headaches (TR 2235). She does not participate in household chores (TR 2233-34), and although she can drive, she can only drive to places that are nearby during the daytime, as she gets blurred vision and lights blind her at night (TR 2224). At the time of her hearing, Plaintiff had no source of income. (TR 2224.) Plaintiff lives alone, but her daughter comes to her home to help with personal care, and she has a chore provider supplied by the Michigan Department of Human Services. (TR 2223.)

Plaintiff testified that her pain started when she injured her right shoulder; her arm is now limp, and she cannot lift it at all. (TR 2225, 2228.) Plaintiff also injured her left shoulder while undergoing physical therapy for her right shoulder. (TR 2228-29.) Further, Plaintiff testified that in July 2007, she developed Bell's palsy.[1] (TR 2226.) This condition causes the left side of Plaintiff's face to droop and causes her eyes and lips to dry out. (TR 2226-27.) Her eyes water regularly, and she is extremely sensitive to light. (TR 2226, 2235.) Additionally, Plaintiff testified that she developed heel spurs that cause her pain when she walks. (TR 2227-28.) Plaintiff also testified that she has depression, anxiety, and panic attacks, which occur several times a day and cause her heart and breathing to race. (TR 2231-32.) Finally, Plaintiff testified that she gets migraine headaches on a regular basis (one-to-two times a month) and that they sometimes cause her to visit the emergency room. (TR 2235.)

---

[1] "Bell's palsy [is a condition that] causes sudden weakness in your facial muscles. This makes half of your face appear to droop. Your smile is one-sided, and your eye on that side resists closing. Bell's palsy, also known as facial palsy, can occur at any age. The exact cause is unknown, but it's believed to be the result of swelling and inflammation of the nerve that controls the muscles on one side of your face. It may be a reaction that occurs after a viral infection." Mayo Clinic Staff, *Bells palsy*, MAYOCLINIC.COM , http://www.mayoclinic.com/health/bells-palsy/DS00168 (last visited Jan 3, 2012).

Plaintiff testified that her Bell's palsy causes food and drinks to spill from her mouth and causes her eyes to water when she tries to read. (TR 2227.) She testified that she can't lift her right arm to do anything: "[i]t's like dead, like jello." (TR 2228.) Thus, she has to user her left arm for all of her personal care, but she cannot reach above her head without pain. (TR 2229-30.) Plaintiff testified that she can get dressed, but she wears loose clothing because it's easier for her to put on, and her daughter helps her put on her bra. She can go to the bathroom by herself, but it is difficult, and she cannot lift a gallon of milk. (TR 2232.) Plaintiff testified that she cannot do any housework or cleaning by herself. (TR 2233.)

Plaintiff testified that she had shock treatment for her Bell's palsy, but the condition remains the same. (TR 2227). She wears sunglasses (indoors as well as outside) and uses saline for her eyes. (TR 2226, 2235.) She takes Naproxen for the pain caused by her heel spurs and migraines; she also takes 800mg of Motrin for her migraines. (TR 2228, 2235.) She also sometimes gets shots (of undisclosed medication) for the pain. (TR 2235.) Plaintiff testified that she had some physical therapy sessions, but she was not getting therapy at the time of the hearing. (TR 2228.) She testified that she had an X-Ray taken on her foot (TR 2227, 2229) and a CT scan of her left shoulder (TR 2229). Plaintiff also testified that her doctor wants to perform surgery on her left shoulder, but because she is overweight and needs to use her arms to left herself up, he cannot perform the surgery. (TR 2236.) Plaintiff testified that she has been unable to lose weight because her conditions make it difficult for her to stay active. (TR 2229.)

**B.     Medical Record**[2]

---

[2]Plaintiff's request for a sentence-four remand is based on the ALJ's alleged failure to properly consider Plaintiff's visual acuity, mood disorders, and restrictions on concentration, persistence, or pace when determining her residual function capacity; the parties do not dispute the ALJ's findings with regard to her other physical impairments. (*See* docket no. 18.) Thus, the

On July 4, 2007, Plaintiff woke up with left facial numbness and weakness. The next day, she saw Dr. Yong, who diagnosed her with what he believed was Bell's palsy. (*See* TR 1470, 1483.) July 6, 2007, Plaintiff had a CT of head; the doctor who reviewed the scan recommended a follow-up MRI. (TR 1465, 1527.) On July 19, 2007, Plaintiff had the MRI, and the results were consistent with Bell's palsy. (TR 1466.) Plaintiff was then officially diagnosed with the condition. (TR 1472.) On August 10, 2007, in her Adult Function Report as part of her social-security claim, Plaintiff indicated that she had trouble seeing (i.e. blurred vision) and completing tasks; she did not indicate any problems with memory, concentration, understanding, or following instructions. (TR 1328.) During an August 14, 2007 follow-up appointment, Dr. Debasish Mridha reported that Plaintiff "has quite severe Bell's palsy and still has weakness. She denies any double vision or blurred vision. She mentioned that she can close her eye better now." (TR 1563.)

As part of Plaintiff's claim for social-security benefits, she reported on October 18, 2007, that she had problems with Bell's palsy, anxiety, and depression. (TR 1538-39.) Her RFC Analysis reported no "visual limitations," but the interviewer did note that "[h]er left eye started watering in the interview." (TR 1543, 1547.) A February 4, 2010 report from Dr. Albert Yong, D.O., her treating physician, noted that "[s]he wears sunglasses to shield the indoor light and she also dabs her eye with a tissue as a result of constant tearing." (TR 2187.)

Dr. Mark Zaroff conducted a mental-health evaluation as part of Plaintiff's disability determination. Dr. Zaroff reported that her health problems contribute to general anxiety and depression, she has panic attacks where her heart races and her chest hurts, and that she went to the hospital once for trouble breathing. (TR 1550.) His report indicated that Plaintiff was hospitalized

---

Court will limit its recitation of Plaintiff's medical record to the relevant conditions.

in 2005 for depression an suicidal ideation. (TR 1550.) Dr. Zaroff noted that during the interview, "her thoughts were logical, organized, and goal directed." (TR 1552.) She admitted to "ongoing feelings of worthlessness and hopelessness, but denied any suicidal ideation." (TR 1552.) Dr. Zaroff diagnosed Plaintiff with "panic disorder without agoraphobia" and "adjustment disorder with depressed mood." (TR 1553.) He indicated that her prognosis was "poor." (TR 1553.) He also indicated that she had "moderate" limitations with respect to maintaining social functioning and maintaining concentration, persistence or pace." (TR 1567; *see also* TR 1571-72.)

Plaintiff received on-and-off care for the next few years, and in January 18, 2010, as part of her ongoing psychological treatment with Kristen Kolberg, LLMSW, Plaintiff indicated that one of her immediate goals was "working towards acceptance and improved focus and concentration." (TR 2133.) In Plaintiff's Annual Assessment on January 20, 2010, her treating psychologist indicated that "throughout most sessions during the last year Lisa leaves her sunglasses on, and she reports that she leaves them on to reduce eye watering." (TR 2139.)

### C. The Vocational Expert

The Vocational Expert (VE) testified that Plaintiff's prior work experience was medium and semiskilled as well as light and unskilled. (TR 2238.) The ALJ asked the VE to consider an individual who was 38-years old and had completed one year of college with a work history the same as Plaintiff's. (TR 2238.) The ALJ asked the VE to assume that this individual was limited to a range of light work; standing and walking about six out of eight hours in a work day; no climbing of ladders, ropes, or scaffolding; no exposure to heights; and only occasional climbing of ramps and stairs. (TR 2238.) The ALJ also asked that the VE consider that the individual be limited to no overhead reaching or constant handling, fingering, or feeling with the dominant arm. (TR 2238-39.) Additionally, the ALJ asked that the individual "be limited to work that involves only

6

simple instructions, only routine tasks, and no public interaction." (TR 2239.)

The VE testified that none of Plaintiff's past jobs would be available to her based on these limitations. (TR 2239.) He also testified that the individual would be able to perform work as a housekeeper, stock clerk, or mail clerk. (TR 2239.) He indicated that in these fields, there would be some 17,100 jobs available in the lower peninsula of Michigan and 654,000 jobs available nationally. (TR 2239.) The stock clerk position, however, did include light overhead reaching. (TR 2223.)

The ALJ then asked the VE to consider someone with the same limitations but the added requirement that the work be sedentary. (TR 2240.) The VE testified that the individual could work as a surveillance system monitor, an assembler, or a packager with 4,200 jobs available in the region and 127,000 jobs available nationally. (TR 2240.) When asked to eliminate all reaching requirements, only the surveillance system monitor position was available. (TR 2241.) When asked if an employer would tolerate the individual being off-task 30% of the time due to concentration problems, the VE testified that an employer would not tolerate such a condition. (TR 2241.)

Plaintiff's attorney asked the VE if any of the jobs that he listed would be impacted if the hypothetical individual was unable to read or work under florescent lights due to visual problems. (TR 2243.) The VE testified that all of the jobs with the exception of the stock clerk and the mail clerk would be affected by any problems with reading. (TR 2243.) He testified that he could not put a number on how much the florescent-lighting limitation would affect his testimony. (TR 2243.) Plaintiff's attorney also asked the VE if the hypothetical person would be precluded from employment if she had to miss work on average three times a month due to headaches, pain, or problems with anxiety or depression. (TR 2243.) The VE testified that this limitation would have a preclusive effect. (TR 2243.)

7

**IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that although Plaintiff met the disability insured status requirements through December 31, 2011; had not engaged in substantial gainful activity since July 2, 2007; and suffered from severe Bell's palsy, internal derangement of the right shoulder, left shoulder tendon tear, heel spurs, migraine headaches, obesity, an adjustment disorder with depressed mood, and an anxiety disorder; she did not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 1148.) The ALJ found that Plaintiff's allegations regarding the extent of her symptoms were not totally credible, and although Plaintiff could not perform her past work, she had the ability to perform a limited range of light work, and there were jobs that existed in significant numbers in the economy that Plaintiff could perform. (TR 1148-58.) Therefore, she was not suffering from a disability under the Social Security Act from July 2, 2007, through the date of the ALJ's decision. (TR 1145.)

**V.      LAW AND ANALYSIS**

     **A.     Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human*

*Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203

F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that her case should be remanded under sentence four for three reasons: (1) her Bell's palsy creates "problems with her left eye tearing, causing problems with blurred vision, " and the RFC failed to address any limitations based on vision; (2) she has severe adjustment disorder with depressed mood and anxiety disorder, but the RFC did not factor in any limitations for mental disorders; and (3) the ALJ found her "moderately restricted in her ability to maintain concentration, persistence, or pace," but the

RFC did not have any limitation based on concentration, persistence, or pace. (Docket no. 18 at 7-12.)

### 1. Bells palsy and Visual Acuity

Defendant asserts that Plaintiff's medical evidence fails to support her allegation of visual limitations, and thus, substantial evidence supports the ALJ's determination. (Docket no. 20 at 16-17.) Defendant notes that Plaintiff told various doctors that she did not have vision problems. (Docket no. 20 at 15-17.) In response, Plaintiff asserts the respective doctors treated her soon after the onset of her Bell's palsy and that the excessive tearing and vision problems "can occur from the onset of Bell's palsy or can develop during recovery." (Docket no. 22 at 2 (citing *www.bellspalsy.ws/eye.htm*).) Additionally, Plaintiff's argument rests on statements by her therapist and physician, confirming that she wears sunglasses indoors, and on her own testimony, wherein she stated that she gets blurred vision, she cannot drive at night, and her eyes dry out and water when she reads. (*Id.*)

While the Court may have come to a difference conclusion, the Court agrees with Defendant that substantial evidence exists to support the ALJ's determination. Regardless of Plaintiff's argument and the possible late onset of vision problems associated with Bell's palsy, Plaintiff's *medical history* is all but bare with regard to any such problems, and the ALJ found such evidence to be less than credible. The ALJ noted that Plaintiff "claimed that she is unable to drive because of blurred vision and watery eyes, but she referred to driving to her physical therapist on multiple occasions." (TR 1151.) Additionally, the ALJ noted that "claimant's left eye did not blink in sync with her right eye[, and] her left eye started watering during [a] Field Office interview." (TR 1153.) Nevertheless, the ALJ found as follows:

> [T]he claimant's medically determinable impairments could reasonably be expected

11

>to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent that they are inconsistent with the above residual functional capacity assessment. . . . I give little weight to the claimant's allegations.

(TR 1151.) The ALJ also based Plaintiff's credibility, in part, on her failure to comply with her prescribed treatment: "This noncompliance with medical treatment is problematic and affects the claimant's credibility in the case before me. . . . [it] actually suggests the claimant's symptoms are more manageable than alleged." (TR 1153.) Thus, the ALJ found that even though Plaintiff had severe Bells palsy, she did not have problems with her vision that warrant consideration in the RFC. Therefore, the Court recommends denying Plaintiff's Motion to remand with regard to any alleged lack of visual-acuity limitations in the RFC.

### 2. Mental Disorders

Defendant asserts that the ALJ adequately accounted for Plaintiff's severe Adjustment Disorder with Depressed Mood and Anxiety Disorder when the ALJ "expressly limited Plaintiff to work involving simple instructions, routine tasks, and no public interaction." (Docket no. 20 at 18.) Plaintiff argues that this limitation is inadequate because it does not account for "the stress aspect of work." (Docket no. 22 at 4.)

In her decision, the ALJ discussed Plaintiff's mental disorders in great detail. She discussed Plaintiff's psychological evaluations and treatment during 2006 and 2007 (TR 1153-54); she noted that Plaintiff takes Adderall, Lamictal, Prozac, and Xanex for these disorders (TR 1154); and she discussed Plaintiff's doctor's opinion that "claimant cannot handle the additional stress of working due to her mother's current health issues (TR 1156). The ALJ did not assign great weight to Plaintiff's doctor's opinion. (TR 1156.) The ALJ did, however, assign great weight to the Administration's medical expert's opinion, in which the expert stated that "claimant would be

capable of performing at least unskilled, simple tasks *in a low stress environment*." (TR 1157 (emphasis added).) Nevertheless, the ALJ did not limit the RFC to such an environment.[3]

Plaintiff contends that the RFC should have included the hypothetical person's limitations when "(1) [u]nderstanding, remembering and carrying out instructions; (2) [r]esponding appropriately to supervision and co-workers; [or] (3) [r]esponding to work pressures in a work setting." (Docket no. 22 at 4 (citing 20 CFR 404.1445(c)).) In support of this position, Plaintiff draws the Court's attention to one of Defendant's prior rulings:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. . . . Thus, the mentally impaired may have difficulty meeting the requirements of even so-called "low-stress" jobs.

(*Id.* (citing Social Security Ruling 85-15) (omission in original).)

The Court agrees with Plaintiff. An ALJ's hypothetical questions to a VE must "accurately portray[ the claimant's] individual physical *and mental* impairments." *Varley*, 820 F.2d at 779-80. Here, the ALJ's limitation to "work involving simple instructions, routine tasks, and no public interaction" did not accurately portray Plaintiff's mental impairments to the VE. Thus, the ALJ's finding is not supported by substantial evidence, and the Court recommends remanding the matter under sentence four for consideration of Plaintiff's mental impairments at step five.

### 3. Concentration, Persistence, or Pace

Plaintiff argues that despite finding that Plaintiff has "moderate difficulty" with concentration, persistence, or pace, the ALJ did not place any such limitations in the hypothetical

---

[3]Oddly, Defendant asserts that the ALJ "reasonably determined Plaintiff retained adequate ability to do *low stress work*." (Docket no. 20 at 22.) Neither the ALJ's decision nor her questions to the VE mentioned any level of "stress" whatsoever.

13

questions presented to the VE. (Docket no. 18 at 7-8.) Instead, the ALJ relied on the same limitation as noted above, that is, "work involving simple instructions, routine tasks, and no public interaction." (*See* TR 1150.) Defendant asserts that "Plaintiff's argument gives inordinate and inappropriate weight to one small aspect of the Commissioner's technique for evaluating mental impairments," and that "substantial record evidence supports the ALJ's finding that [Plaintiff] could perform work involving simple instructions, routine tasks, and no interaction with the public." (Docket no. 20 at 18-19.)[4]

The Court agrees with Defendant that the record supports such a finding from the ALJ, but such a finding should not have ended the ALJ's inquiry. As plaintiff points out,

> The fact that a job is simple and routine has nothing to do with whether or to what degree a worker's moderate deficiencies in concentration will affect the timely completion of that job, and indeed, courts have found such descriptions insufficient to address deficiencies in pace. Nor does the qualifier "low stress" effectively "capture the concrete consequences" of Plaintiff's limitations in pace. Stress does not necessarily correlate with pace and the ability to complete tasks in a timely manner over an eight-hour workday.

*Cheeks v. Comm'r of Soc. Social Sec.*, 690 F.Supp.2d 592, 602 (E.D. Mich. 2009) (Feikens, J.) (internal citations omitted). Thus, unless the ALJ did not intend to account for any impairment of concentration, persistence, or pace, some limitation should have been applied to the RFC. But the ALJ acknowledged that even given Plaintiff's credibility issues, she "accounted for [such an impairment] when making [her] decision." (TR at 1156.) Moreover, the VE's testimony implies that concentration problems could very well preclude employment. (*See* TR 2241.) Therefore, the

---

[4]Defendant also argues that Plaintiff misinterprets the "moderate" rating applied to her impairment and that a moderate deficiency in concentration, persistence, or pace "cannot, without further inquiry, dispositively establish that the claimant is disabled." (Docket no. 20 at 19, 19 n.8.) But it is precisely that inquiry that Plaintiff seeks. Plaintiff does not argue that her impairment creates a per se disability; Plaintiff asserts that Defendant's failure to consider it at all warrants a remand for such consideration. (Docket no. 22 at 7-8.)

Court recommends remanding this matter under sentence four for consideration of Plaintiff's difficulty with concentration, persistence, or pace at step five.

## VI. CONCLUSION

This case should be remanded under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. Because a sentence-four remand is warranted, Plaintiff's Motion to Remand (docket no. 18) should be GRANTED IN PART with respect to her mental impairments and her difficulty with concentration, persistence, or pace and DENIED IN PART with respect to her visual acuity. And Because the Court recommends granting Plaintiff's Motion in part, Defendant's Motion for Summary Judgment (docket no. 20) should be DENIED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: January 9, 2013           s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 9, 2013          s/ Lisa C. Bartlett
                                   Case Manager